ENRIQUE PETROVICH BOSCIO, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 11143. Argued April 3, 1956.—Decided April 30, 1956.

*Córdova & González* for appellant. *José Trías Monge, Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General,* for appellee.

ON RECONSIDERATION

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

The taxpayer urges this Court to reconsider its opinion affirming the judgment of the lower court. The two questions presented are, briefly: (1) Is the net loss sustained by the partnership in 1940 deductible for the purpose of determining the *net income distributable* in 1941 (that is, the partnership profits in that year which are subject to the payment of income tax by the partners, regardless of whether or not they are undistributed) in the same manner as it is deductible for the purpose of determining the partnership's *taxable net income* for 1941? and (2) Is the defense of recoupment applicable to the 1941 deficiency notified to taxpayer?

There is no dispute as to the facts. Petrovich and his wife were silent partners of Monllor & Boscio, Sucrs., *S. en C.*, from 1940 to 1943 inclusive. In 1940 the partnership sustained in its operations a "net loss" of $47,853.41,

which the Treasurer allowed as a deduction from the gross income for the purpose of determining the partnership's taxable net income for 1941. The partnership profits received in 1941 were not distributed that year, but during 1942 and 1943. Petrovich did not report as income, in 1941, his share of the partnership's undistributed profits for that year. He did, however, report those profits in his returns when they were distributed in 1942 and 1943 and paid the income tax thereon. In 1950 the defendant notified Petrovich of a deficiency in his 1941 income tax, based on the profits made and not distributed by the partnership in that year, which corresponded to the taxpayer and his wife but which were not reported in Petrovich's 1941 return. For the purpose of determining the partnership's profits in 1941, *i. e.*, the partnership's *distributable* net income for that year, the defendant disallowed the deduction of the "net loss" sustained by the partnership in 1940. The defendant therefore added to the partnership's *taxable* net income for 1941 the sum of $47,853.41, which was the "net loss" sustained by the partnership in 1940.

The problems presented in this case arise, in the first place, from the amendment incorporated in § 4(a) of the old Income Tax Act by Act No. 31 of April 12, 1941 (Sess. Laws, p. 478), and, secondly, from the fact that, when the defendant notified Petrovich of the 1941 deficiency, the period for requesting refund of the 1942 and 1943 taxes overpaid by him had already expired. From 1941 until 1949, the Treasurer and the taxpayers apparently did not know that pursuant to Act No. 31 of 1941, if the members of a partnership are entitled to a share in the profits (even if they are not distributed or received by the partners) they are bound to pay income tax thereon. See *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 700 (1949), 70 P.R.R. 364 (1949), and Act No. 424 of May 13, 1951 (Sess. Laws, p. 1132). That is why Petrovich did not report as income, in 1941, his share of the profits obtained by the partnership in that year

and which were not distributed; yet, he reported and paid income tax on those profits in the years in which they were distributed, namely, 1942 and 1943.

As a result of the amendment incorporated in § 4 (a), a new concept arose in our tax legislation—"the distributable net income of a partnership." We know it refers to the earnings or profits of any partnership corresponding to the partners in each taxable year, even if they have not been distributed or received by them. However, the law does not say expressly how the "distributable net income" is to be determined. There is only one clear and precise definition of the concept of *taxable net income* of the partnership in each taxable year. It is obvious, however, that both are inextricably connected although in certain respects they are different. In *Descartes* v. *Tax Court; Heirs of Cautiño, Int.*, 71 P.R.R. 230, 233 (1950), we pointed out that: ". . . one thing is the net taxable income and another the net distributable income . . . since there are items, for example those of income tax and gifts, that, since they are not deductible for income tax purposes, they form part of the net taxable income of the partnership, and yet they do not form part of the *distributable profits thereof.*" Yet, it would be absurd to hold that the deductions from the gross income expressly allowed by law for the purpose of determining the partnership's taxable net income are not allowable as deductions for the purpose of determining the distributable net income. The defendant even admits that the deductions allowed by § 32 to the partnership in computing its taxable net income are also allowable in computing the distributable net income, which is subject to the payment of income tax by the partners. Logically, there is no basis for discriminating between the deductions listed in § 32 and the deduction for "net loss" provided in § 9, for the purpose of determining the partnership's distributable net income. The Treasurer may not arbitrarily allow certain deductions and reject others. All the deductions from the gross income

allowed by law in determining the *taxable net income* for a taxable year are also allowable for the purpose of determining the partnership's distributable net income in the same taxable year. Hence, the distributable net income of a partnership may never be *greater* than the taxable net income in any taxable year, although it may be *less* according to the holding in *Descartes* v. *Tax Court; Heirs of Cautiño, Int., supra.* The validity of this general rule may be easily verified by analyzing specifically the deduction of the "net loss" sustained in the partnership's operation, which is the specific problem presented in the case at bar. In computing the partnership's taxable net income it is permissible to carry over to the following year the net loss in the operations, for the Legislature intended to cure or mitigate certain injustices committed whenever there is a taxable year as a unit of strict measure. In other words, it is unfair to impose very high taxes on income received in a taxable year if the taxpayer has sustained heavy losses in the operation during the period of development of the business, which will later permit him to produce substantial income. Exactly the same reasons exist for permitting a partnership to carry over to the following year the "net loss" (as defined in § 9) sustained in its operations for the purpose of determining the net income distributable among the partners, subject to the payment of income tax by the latter under § 4(a) of the old Income Tax Act.[1]

Regarding the doctrine of recoupment, the Superior Court, without further explanation, merely dismissed

---

[1] The question raised in the case at bar was not decided in *Calaf* v. *Secretary of the Treasury,* 76 P.R.R. 540. There the partners invoked § 9 of the old Income Tax Act (13 L.P.R.A. § 631 *et seq.*) in order to deduct the net loss in the operations sustained by the partnership in 1940, 1941, and 1943, *from the gross income derived from other sources by each partner in those years.* For the reasons stated in that case, we must conclude that the partners (or members of the joint venture) have no right to deduct in their individual returns any portion of the losses sustained by the enterprise or partnership (p. 584). *Cf. Heirs of Serrallés* v. *Treasurer,* 6 D.T.C. 485 (1950).

the same for lack of evidence. We originally upheld that conclusion—in the judgment of November 3, 1954 (77 P.R.R. 152) and which is now under reconsideration—relying on the ruling of *Lewis* v. *Reynolds*, 284 U. S. 281 (1932). We held that:

". . . the fact that the deficiency is based on profits realized and not distributed in 1941, and that those profits or part thereof were taxed in 1942 and 1943, does not in itself imply that the taxpayer has a credit against the Government if, in fact, he has not shown that he paid taxes in excess in 1942 and 1943. These years are not in dispute, nor have they been opened for reauditing by any act of the Treasurer, nor were they under the consideration of the lower court. Therefore, all the items therein shown, the income reported as well as deductions and exemptions claimed, cannot be re-audited in order to determine whether an overpayment resulted from including in those years the profits distributed by the partnership in those same years, in the event those same profits were taxable in 1941. It was incumbent upon the taxpayer to prove that in 1942 and 1943 he overpaid the income taxes which by law he was bound to pay. This he failed to do and, in the absence of such a showing, he cannot invoke the doctrine of recoupment.

"If in acting upon a claim for refund, based on an overpayment made in a given year, the Secretary of the Treasury has authority to reaudit the entire year and all such items as are shown therein in order to ascertain whether such overpayment was made, which involves a redetermination of the entire tax liability, *Lewis* v. *Reynolds,* 284 U. S. 281, we fail to see how the taxpayer may claim, by way of recoupment, an overpayment based on only one of the items involved. Obviously, the isolated determination of such item would not constitute sufficient basis for deciding whether or not an overpayment was made in the taxable year in question." (P. 158.)

In this motion for reconsideration, the taxpayer alleges briefly: (1) that the recoupment doctrine is not limited by the ruling in the *Lewis* case, and, therefore, that he is not bound to show that he overpaid taxes in 1942 and 1943, after all the items for those years were reaudited; (2) that both the 1941 deficiency and the overpayment made in 1942 and 1943

arise from the same "transaction," as this term is used in the recoupment doctrine; (3) that since the Treasurer refuses to refund or credit the taxes overpaid by him in 1942 and 1943, alleging that the four-year statute of limitations for requesting the refund has expired, there also exists the "inconsistency" required to apply the recoupment doctrine; and, lastly, (4) that if the statute of limitations were strictly applied, the result would be an unjust enrichment (that is, the Treasurer would be collecting taxes twice on the same income), wherefore the recoupment defense would be applicable, which, contrary to the defense of estoppel, does not depend on whether one of the parties induced the other to commit an error.[2]

For jurisdictional reasons, we believe we ought not to pass upon the questions raised by the taxpayer on the theory of recoupment. Section 57(h) of the Act, as re-enacted on October 8, 1954, by virtue of Act No. 9 (Spec. Sess. Laws, p. 122 *et seq.*), provides that: "In passing upon a deficiency with respect to any taxable year, the Superior Court shall consider such facts relating to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, *but in so doing it shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.*" (P. 140.)

---

[2] See in this connection: *González Padín* v. *Tax Court*, 66 P.R.R. 909 (1947); *Cía. Azucarera* v. *Tax Court*, 72 P.R.R. 850, 865–69 (1951); *Ronrico Corp.* v. *Treasurer*, 77 P.R.R. 388 (1954); *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296 (1946); Maguire and Zimet, *Hobson's Choice in Federal Taxation*, 48 Harv. L. Rev. 1281 (1935); *Estoppel and Recoupment in Federal Taxation After the Revenue Act of 1938*, 52 Harv. L. Rev. 300 (1938); *The Effect of Section 609 of the Revenue Act of 1928*, 52 Harv. L. Rev. 496 (1939); 10 Mertens, *The Law of Federal Taxation*, §§ 58.38 and 58.39; 10–A Mertens, *supra*, §§ 60.01—60.19; *Equity in the Administration of the Revenue Act*, 39 Col. L. Rev. 460 (1939); McConnell, *The Doctrine of Recoupment in Federal Taxation*, 28 Va. L. Rev. 577 (1942); Atlas, *The Doctrine of Estoppel in Tax Cases*, 3 Tax. L. Rev. 71, 86–87 (1947); Note, 12 A.L.R. 2d 815; Mintz and Plumb, *Taxing Income in Years Not Realized Under Doctrine of Equitable Estoppel*, Proceedings of the Tax Institute, Univ. of So. California School of Law (1954), 481, 504–17.

Section 57(*h*) limits the jurisdiction of the courts in Puerto Rico in cases involving income-tax deficiencies, in the same manner as § 272(*g*) of the Federal Internal Revenue Code of 1939 (§ 6214(*b*) of the Federal Code of 1954) limits the jurisdiction of the Federal Tax Court, formerly known as the Board of Tax Appeals.[3] In *Comm.* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418, 420–22 (1943), the Supreme Court of the United States, construing § 272(*g*) *supra*, held:

"The Board's (of Tax Appeals) want of jurisdiction to apply the doctrine of equitable recoupment in this case is manifest from these statutory provisions. The Commissioner assessed a deficiency only for the 1936 fiscal year and it was this assessment of which the respondent sought a review. The Board thus had jurisdiction to do no more than redetermine the 1936 deficiency distinct from any overpayment or underpayment in any prior or subsequent year . . . The redetermination of the tax liability for the 1936 fiscal year was in no way dependent on any prior tax assessment or overpayment. Likewise, neither the fact that the prior overpayment could no longer be refunded nor the fact that the overpayment exceeded the amount of the deficiency had any relevancy whatever to the redetermination of the correct tax for the 1936 fiscal year. The respondent, in other words, was seeking to have the 1935 overpayment used, not as an aid in redetermining the 1936 deficiency, but as an affirmative defense or offset to that deficiency. This necessarily involved a determination of whether there was an overpayment during the 1935 fiscal year. The absolute and unequivocal language of the proviso of § 272(*g*), however, placed such a determination outside the jurisdiction of the

---

[3] "The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year shall consider such facts with relation to the taxes for other years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid." Section 57(*h*), as amended, is exactly the same as § 272(*g*) of the new Income Tax Act—Act No. 91, approved June 29, 1954. Section 504 of the Internal Revenue Act of 1942, c. 619, 56 Stat. 798, 957, changed the name from Board of Tax Appeals to The Tax Court of the United States. Section 504(*b*) provided, however, that the jurisdiction, powers, and duties of the entity would no be affected by such change.

Board. Thus to allow the Board to give effect to an equitable defense which of necessity is based upon a determination foreign to the Board's jurisdiction would be contrary to the expressed will of Congress.

". . . Until Congress deems it advisable to allow the Board to determine the overpayment or underpayment in any taxable year other than the one for which a deficiency has been assessed, the Board must remain impotent when the plea of equitable recoupment is based upon an overpayment or underpayment in such other year." (P. 420–22.)

It is true that the Supreme Court of the United States in that case specifically pointed out that "We are not called upon to determine the scope of equitable recoupment when it is asserted in a suit for refund of taxes in tribunals possessing general equity jurisdiction." (P. 421.) This clarification was due solely to the fact that § 272 (g) merely limits the jurisdiction of the Federal Tax Court (formerly Board of Tax Appeals), and does not apply to the Federal District Courts before which, under certain circumstances, income-tax suits brought under the federal law may be tried. But in Puerto Rico § 57 (h) expressly limits the jurisdiction of the Superior Court, which is the only court having jurisdiction over tax matters and, hence, the appellate jurisdiction of this Court. Nor are we called upon to decide in this case whether in an action for refund under § 57 (h) the recoupment doctrine would be inapplicable. See 13 L.P.R.A. §§ 261–90; 13 L.P.R.A. § 773; Cf. 12 A.L.R. 815; Mintz and Plumb, *Taxing Income in Years not Realized Under Doctrine of Equitable Estoppel*, Proceedings of the Tax Institute, Univ. of So. California School of Law (1954), 481, 504–17.[4]

---

[4] The problems, the solution of which has been attempted through the judicial theory of recoupment, certainly call for legislative action. In this connection, see §§ 1311–13 of the Federal Internal Revenue Code of 1954. These sections, which were originally enacted in 1938, as § 820 of the Federal Act, do not appear in our recent Income Tax Act of 1954. See, in this connection: Mintz and Plumb, *op. cit. supra*, 517 *et seq.; Relief from the Statute of Limitations in Tax Cases Under Section 3801*, 40 Va. L. Rev. 773 (1954); Landman, *Tax Relief from the Statute*

Of course, we are not giving retroactive effect to the provisions of § 57 (h), as amended on October 8, 1954. This section plainly applies to all cases which were pending at the time of its enactment. The case at bar was still pending on appeal when the Legislature enacted Act No. 9 of 1954.[5] On the other hand, there is no constitutional bar preventing us from applying in this case the limitation imposed by the legislative power on the authority of our courts through § 57 (h). Article V of the Constitution of the Commonwealth of Puerto Rico clearly reserves to the Legislative Assembly the power to determine the authority or venue of the courts, except that the Supreme Court shall be "the

---

of Limitations, 5 Tax L. Rev. 547 (1950); Wilkinson, Mitigation of the Effect of the Statute of Limitations Under the Income Tax Laws, 27 Tax L. Rev. 818 (1949); Maguire, Surrey and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L. J. 509, 719 (1939); Kent, Mitigation of the Statute of Limitations in Federal Tax Cases, 27 Calif. L. Rev. 109 (1939); Seidman, Section 820 of the Revenue Act of 1938, 17 Taxes 341 (1939); Section 820: Equity in the Administration of the Revenue Act, 39 Col. L. Rev. 460 (1939); Estoppel and Recoupment in Federal Taxation After the Revenue Act of 1938, 52 Harv. L. Rev. 300 (1938).

[5] See Suárez v. Tugwell, 67 P.R.R. 166, 170–71 (1947). Cf. Sunland Biscuit Co. v. Minimum Wage Board, 68 P.R.R. 345 (1948). In Baltimore & P.R.R. Co. v. Grant, 98 U. S. 398, 401–02, 25 L. Ed. 231, 232–33 (1879), the Supreme Court of the United States held that: ". . . if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law . . . The Act of 1879 is undoubtedly prospective in its operation. It does not vacate or annul what has been done under the old law. It destroys no vested rights. It does not set aside any judgment already rendered . . . But a party to a suit has no vested right to an appeal . . . Such a privilege once granted may be taken away, and if taken away, pending proceedings in the appellate court stop just where the rescinding act finds them, unless special provision is made to the contrary . . ." See also In re Hall, 167 U. S. 38, 42 L. Ed. 69 (1899); Stephan v. United States, 319 U. S. 423, 87 L. Ed. 1490 (1943); 21 C.J.S. Courts, § 95 and cases therein cited. It is well to point out that, obviously, § 386 of the Political Code is not applicable to this case. This section provides: "The repeal of any statute by the Legislative Assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." Cf. Puerto Rico Ilustrado, Inc. v. Buscaglia, 64 P.R.R. 870, 910–13 (1945).

court of last resort in Puerto Rico," with authority also to "hear in the first instance petitions for habeas corpus and any other causes and proceedings as determined by law." See Vol. 1 L.P.R.A. pp. 197–99. Moreover, the debates in the Constitutional Convention of Puerto Rico allow no room for doubt in this connection. See Journal of Sessions of the Constitutional Convention of Puerto Rico, pp. 178–79, 221–43.[6]

The previous judgment will be modified so as to allow the deduction of the net loss sustained by the partnership in 1940 in computing the net income distributable among the partners in 1941, and, as thus modified, the judgment appealed from will be affirmed and the case remanded to the San Juan Part of the Superior Court for further proceedings not inconsistent with this opinion.

Mr. Justice Belaval concurs in the result as to the modification of the judgment to the effect of allowing the deduction of the net loss sustained by the partnership in 1940 in computing the net income distributable among the partners in 1941, but he dissents as to the rest in a separate opinion.

---

Separate opinion of MR. JUSTICE BELAVAL.

The facts under consideration are the following: the taxpayer did not include in his income tax return for the taxable year 1941 certain profits realized and not distributed which corresponded to him as a silent partner of Mercantil

---

[6] In this connection, see: Report of the Judicial Branch of the Constitutional Convention of Puerto Rico: "This section (No. 2 of Art. V) establishes the complete unification of the courts of Puerto Rico. The unification of the courts produces, among other effects, the elimination of technical problems concerning jurisdiction. The legislative power is, nonetheless, authorized to determine the jurisdiction of the courts . . . including the place where the cases shall be tried." In addition to the cases cited in footnote 5, see also: *Ex parte McCardle*, 6 Wall. 318 (1868), 7 Wall. 506 (1869); *Missouri* v. *Missouri Pac. Ry. Co.*, 292 U. S. 13, 78 L. Ed. 1087 (1934); Robertson and Kirkham, *Jurisdiction of the Supreme Court of the United States* (Wolfson and Kurland, 1951 ed.) pp. 1–3; Frankfurter and Greene, *Labor Injunctions and Federal Legislation*, 42 Harv. L. Rev. 766, 775–77 (1929).

Monllor & Boscio Sucrs., *S. en C.;* when said partnership distributed in the years 1942 and 1943 the profits received in 1941, the taxpayer reported and paid the profits which he should have included in the income tax return for the taxable year 1941 in his returns corresponding to the taxable years 1942 and 1943.

After examining the income tax return for 1941, the Secretary of the Treasury notified the taxpayer of a deficiency for the profits that Mercantil Monllor & Boscio Sucrs., *S. en C.* should have distributed but failed to distribute in 1941. Alleging that he had reported and paid those profits in his income tax returns for 1942 and 1943, the taxpayer urges that the defense of equitable recoupment be applied to this case as the same was sanctioned by our case law in the cases of *González Padín Co.* v. *Tax Court,* 66 P.R.R. 909, 914 (Snyder) (1947); *Cía. Azucarera* v. *Tax Court,* 72 P.R.R. 850, 865–67 (Todd, Jr.) (1951); see also *Ronrico Corporation* v. *Treasurer,* 77 P.R.R. 388, 392–94 (Belaval).

Originally our reasons for denying the application of that defense to the case at bar were the following:

"In order that this doctrine may apply here, the facts must disclose that appellant has a credit in his favor and against the Government as a result of the taxes paid in excess in 1942 and 1943. We would then have to examine the facts in order to determine whether the requirement of 'the same transaction' has been met. *González Padín Co.* v. *Tax Court, supra.* However, the latter is, in our opinion, unnecessary. The uncontroverted facts show at the most that the taxpayer paid taxes on the profits distributed by the partnership in 1942 and 1943, and that part of those profits were realized by the partnership in 1941 and not distributed in that year. The taxpayer does not deny that he was under duty to report his corresponding share of the profits realized by the partnership in 1941, and to pay tax thereon even though they were not distributed. The Government did not take the position that those profits were not taxable because of the fact that they had not been distributed, so that its subsequent action in notifying the 1941 deficiency can not be regarded as inconsistent. However, the fact that

the deficiency is based on profits realized and not distributed in 1941, and that those profits or part thereof were taxed in 1942 and 1943, does not in itself imply that the taxpayer has a credit against the Government if, in fact, he has not shown that he paid taxes in excess in 1942 and 1943. These years are not in dispute, nor have they been opened for reauditing by any act of the Treasurer, nor were they under the consideration of the lower court. Therefore, all the items therein shown, the income reported as well as deductions and exemptions claimed, cannot be re-audited in order to determine whether an overpayment resulted from including in those years the profits distributed by the partnership in those same years, in the event those same profits were taxable in 1941. *It was incumbent upon the taxpayer to prove that in 1942 and 1943 he overpaid the income taxes which by law he was bound to pay. This he failed to do and, in the absence of such a showing, he cannot invoke the doctrine of recoupment.*"

This case was submitted by the parties on a stipulation of facts, clause No. 15 (J. R. 7) of which stipulated: "There are attached and made a part of this stipulation . . . (c) copies of the income tax returns filed by the petitioner Enrique Petrovich Boscio for the years 1941, 1942 and 1943" which "appear in this judgment roll as *exhibits c, d, and e.*" By virtue of that stipulation and exhibits the parties admitted and, therefore, considered proved for the purpose of this suit, the incomes actually reported in each one of the three years, their date of payment and the items for which they were paid.

In his opposition to the reconsideration sought, the Secretary of the Treasury tries to convince us that the contents of the income tax returns do not constitute evidence. We are agreed that this would be the case if the taxpayer had asked the court to consider as proved a particular fact by merely referring to the income tax return. But that is not the case here. In the instant case, the returns were introduced as evidence and marked as exhibits, by stipulation of both parties, and, therefore, their contents were admitted as evidence.

The case cited by the Secretary of the Treasury to establish that the income tax returns do not constitute evidence —*The Times Tribune Company* v. *Commissioner of Internal Revenue*, 20 T. C., 449, 452 (Murdock) (1953)—is not strictly in point here because it does not clearly appear from the opinion that their contents were expressly stipulated. Income tax returns are regarded, as held by the very case cited, as admissions against interest of the party introducing them and may prove facts therein detrimental to that party. When income tax returns are introduced in evidence by stipulation, said detrimental interest operates against both parties, since the admission of the contents renders the same as admitted and uncontroverted evidence which must be regarded as detrimental to either one of the parties. We find nothing in the stipulation submitted here to show that the stipulating parties meant to limit the admission of said evidence to a single specific fact contained in the returns. Therefore, we must accept that the admission embraced everything contained in those returns. Furthermore, clause No. 10 of the stipulation specifies the profits from 1940 to 1943 and clause No. 14 establishes the percentage corresponding to each partner from those profits.

In our opinion the taxpayer proved through the income tax returns introduced for that purpose and the stipulated facts previously recited, that although in 1941 he did not include the profits that should have been distributed by the Mercantil of which he is a silent partner, he paid for those profits in the years 1942 and 1943.

The taxpayer's returns corresponding to the years in issue are very simple: (1) the return corresponding to 1941 filed jointly with his wife shows two items of gross income: (*a*) salaries and bonus of the Mercantil Monllor & Boscio: $10,086.82 and (*b*) partnership profits $227.39, and four items of deduction: (*a*) personal exemption $2,000, (*b*) credit for dependents $1,200, (*c*) payment of taxes $90.45, (*d*) gifts $100; (2) the return for the taxable year

1942 filed jointly with his wife shows three items of gross income: (*a*) $10,900 of salaries, (*b*) $564 of rentals, (*c*) $4,856.94 of partnership profits and five items of deductions: (*a*) personal exemption $2,000, (*b*) credit for dependents $1,200, (*c*) $29 for depreciation of houses yielding rent, (*d*) $81.08 for taxes paid, and (*e*) $200 for gifts; (3) the return for the taxable year 1943 filed jointly with his wife shows three items of gross income: (*a*) $13,600 salaries, (*b*) $936 for rental, (*c*) $3,447.11 partnership profits, and six items of deductions: (*a*) personal exemption $2,000, (*b*) credit for dependents $1,200, (*c*) $139 for depreciation of houses yielding rent, (*d*) $116.98 for taxes paid, (*e*) $502.56 for victory tax, and (*f*) $700 for gifts.

Hence, this is not a case where an intricate enumeration of incomes and deductions would have rendered difficult the task of the Secretary of the Treasury of imposing deficiencies for other taxable items. As a matter of fact, upon examining the 1941 returns the only deficiency imposed by the Secretary of the Treasury was the undistributed partnership profits which the taxpayer did not report.

As to the profits distributed by the partnership, it being treated as the same item, the amount of which is not in dispute, the fact that those corresponding to the year 1941 were not included in the income tax return for that year, but were accumulated with those distributed and reported in the years 1942 and 1943, merely shows a deficiency for 1941 in favor of the Treasurer and an overpayment in favor of the taxpayer in that same amount for the years 1942 and 1943. This fact has been admitted by the parties and need not be proved. Therefore, the deficiency for 1941 is offset by the overpayment of that same item during the years 1942 and 1943, a typical case of equitable recoupment.

Up to here it has been a question of evidence where any difference of opinion would not change the doctrinary aspect of the question in issue. But our original opinion in this case seems to have been based on the theory that where

the taxpayer pleads the defense of equitable recoupment, the Secretary of the Treasury may proceed to redetermine the entire tax liability of the taxpayer as if it were a case of refund. This assertion is contained in our original opinion: "However, the fact that the deficiency is based on profits realized and not distributed in 1941, and that those profits or part thereof were taxed in 1942 and 1943, does not in itself imply that the taxpayer has a credit against the Government if, in fact, he has not shown that he paid taxes in excess in 1942 and 1943. These years are not in dispute, nor have they been opened for reauditing by any act of the Treasurer, nor were they under the consideration of the lower court. *Therefore, all the items therein shown, the income reported as well as deductions and exemptions claimed, cannot be re-audited in order to determine whether an overpayment resulted from including in those years the profits distributed by the partnership in those same years, in the event those same profits were taxable in 1941.*"

A more thorough study of the question in issue has convinced us that this theory should be discarded. In equitable recoupment the problem presented is not one of reliquidation of income but one of identifying a particular item, since both the taxing power of the State and the taxpayer's right to a refund are limited by the statute of limitations.

There is a fundamental difference between a claim for refund and the defense of equitable recoupment, not only in the remedial aspect but also in the substantive aspect of the question. Refund is a part of the mechanism of recovery established in favor of the taxpayer to return to him any tax overpayment. In a claim for refund the taxpayer may claim the overpayment of any of the items included in his return as long as he is not barred by the statute of limitations since this is a statutory right which expires by prescription.

In a claim for refund under the provisions of § 64 of our Income Tax Act of 1924, before it was repealed by Act

No. 230 of May 10, 1949 (Sess. Laws, p. 706) and re-enacted by Act No. 232 of May 10, 1949, which is the law applicable in the instant case, the former Treasurer of Puerto Rico was bound, before proceeding to refund the over-payment, to redetermine the taxpayer's entire tax liability not only for the income tax return on which he based his claim but also for any other returns where the State might have a credit in its favor, still recoverable, in order to credit the overpayment against any income or excess-profits tax or instalment thereof which might be due from the taxpayer: *Figueras* v. *Secretary of the Treasury*, 78 P.R.R. 41 (Belaval).

The theory is that the State cannot refund any overpay-ment while the taxpayer owes any income tax to the State, for that would double, in detriment to the State, the task of imposing as well as collecting the tax.

The defense of equitable recoupment corresponds to the right of set-off existing in favor of the taxpayer to offset any item formerly paid. Under the right of equitable re-coupment the taxpayer may only claim recoupment against items involved in the deficiency notified, because of previous payment of the same item in other income tax returns, since his right to refund having prescribed, he cannot claim re-covery of any taxes erroneously paid. In a defense of equi-table recoupment the former Treasurer had only to deter-mine whether the item on which the deficiency was based had been reported in good faith in another taxable year and actually paid by the taxpayer: *Ronrico Corporation* v. *Treasurer of Puerto Rico*, 77 P.R.R. 388, 392–95. (Belaval). The theory is that it is contrary to morals and to individual economy that the State collect twice for the same taxable item, if in good faith, through error in computing an item or due to an erroneous application of the law, the taxpayer makes the mistake of reporting a given income in a year other than the one to which it corresponds.

For these reasons, in the light of procedural as well as of substantive law, the claim for refund and the defense of recoupment are not interchangeable nor can they be merged, as if it were a single question.

The precedent which we originally applied in the decision of this controversial issue was the case of *Lewis* v. *Reynolds,* 284 U. S. 281, 283, 76 L. Ed. 293, 295 (McReynolds) (1932). That case cannot be applied in a petition for equitable recoupment such as the one at bar because (1) the case refers to a claim for refund pursuant to § 284 of the Federal Revenue Act of 1926 concerning credits and refunds—44 Statutes at Large, Part II, Public Laws p. 66—equivalent to the former § 64 of our Act of 1924, concerning refunds and it does not refer to § 273 of the Federal Revenue Act of 1926 —44 Statutes at Large, Part II, Public Laws p. 55—concerning the notice of deficiency which is the one giving rise to equitable recoupment, equivalent to § 57 of our Act of 1924, as amended, referring to deficiencies; (2) the case limits the power of the Federal Commissioner of Internal Revenue to a redetermination of the tax liability of the petitioner within the same return on which the claim for refund is based and not in other returns for other years which is the more common case of equitable recoupment—10-A Merten's *Law of Federal Income Taxation* 181, § 60.11 (Callaghan and Company, 1948 ed.) because of the mechanics characteristic of the federal statute of limitations.

It is well known that in the Federal Law both the term for filing a claim for refund and the term for assessing the tax and imposing a deficiency are identical—§ § 322 and 275 of the Revenue Act of 1928, applicable to the *Lewis* v. *Reynolds* case. It may happen alternatively that the Commissioner of Internal Revenue, in notifying a deficiency on the last days of the limitation period, bars the taxpayer from claiming refund because his right has prescribed, or the taxpayer, in claiming a refund on the last days of the statutory period, bars the Commissioner from notifying a deficiency

because his right has prescribed. Under both circumstances it has been held that although the right of the other aggrieved party has prescribed, equity—*æquitas est æqualitas*—should interfere to place them in equal conditions. Hence, where a single party timely prays for the remedy, it will permit the other party to plead his equitable defense or deny the refund through redetermination even if he is barred by the statute of limitations.

The case of *Lewis* v. *Reynolds* is typical of this legal situation. The taxpayer timely claimed a refund and also objected to a reauditing of his entire tax liability on the ground that, under § 277 of the Federal Revenue Act of 1926, the Commissioner lacked authority to redetermine and reassess the tax after the statute had run. The court merely placed them in equal conditions.

The rule of the case of *Lewis* v. *Reynolds*, which seems so reasonable when the terms to claim refund and to impose the deficiency giving rise to the equitable recoupment are identical, does not seem so reasonable when such terms are not identical, as here in Puerto Rico, because then the taxpayer is placed in an unfair position.

It is well known that pursuant to § 64 (*b*) of our Income Tax Act of 1924, before it was repealed by Act No. 230 of May 10, 1949, and reenacted by Act No. 232 of that same date, which is the law applicable here, the term for claiming refund was four years, and, pursuant to § 60 (*a*) (1) of that same law, as amended by Act No. 31 of April 12, 1941, the term to assess the tax and impose the deficiency giving rise to the equitable recoupment defense was seven years. It may happen then, unfair in the alternative, that the Secretary of the Treasury, in notifying the deficiency giving rise to the equitable recoupment, after the Secretary's first four years of limitation have run, bars the taxpayer from claiming refund for the payment of said item, because the taxpayer's limitation period has run, whereas the taxpayer in claiming refund would never bar the Secretary of

the Treasury from notifying the deficiency giving rise to the equitable recoupment because his right prescribes three years later.

The instant case is typical of the latter situation of law. After the statute of limitation of the taxpayer to claim refund had run, the former Treasurer timely imposed a deficiency —which is the one giving rise to the recoupment defense— for undistributed profits which the taxpayer ought to have reported in 1941 but did not report until 1942 and 1943, in keeping with our own case law, and now the Treasurer objects because we consider the taxpayer's equitable recoupment defense, on the ground that, since he did not investigate the years 1942 and 1943, he has been unable to redetermine the taxpayer's entire tax liability, in order to determine, in connection with the auditing of all the items of said years, whether there has been an overpayment.

Should the Secretary of the Treasury's theory prevail, the inequity would be manifest: while the Secretary of the Treasury could redetermine the taxpayer's entire tax liability, the taxpayer could only be entitled to claim recoupment for the item involved in the notice of deficiency; while the Secretary of the Treasury could evade the theory of stale claims sanctioned by our statute of limitations in favor of the taxpayer, the taxpayer could not evade it; while the Secretary of the Treasury could make reassessments in connection with all the errors which the taxpayer in good faith committed in computing his income, the taxpayer would receive no credit for any error committed in the deductions authorized by law or for any error of inclusion committed in good faith in different years, for he is restricted to a single item of a specific tax year. It is convenient to remember that our own Act of 1924 did not provide for the automatic credit for overpayment contained in the corresponding Federal Act, as amended.

Involuntarily we committed this error of Law as well as of Justice in our original opinion, by applying to the equi-

table recoupment defense—identity of a single item in different tax years—the principles of the claim for refund —reauditing of the entire tax liability still recoverable— before proceeding to refund the overpayment.

The equitable recoupment defense is a structure of fair law designed to prevent the taxpayer as well as the Secretary of the Treasury from taking shelter behind the barrier of the statute of limitations in order to take advantage of each other. Although the defense is not designed to defeat ultimately the statute of limitations, it is applied to counteract the inequities that may arise when a party, finding that the other party is barred by the statute of limitations, tries to exercise the right of recovery or assessment of a tax which, were it not for prescription, would not accrue. Since this defense is limited by prescription, it cannot be employed to allow any set-off and, contrariwise, it is limited to the more general case of whether a particular item, whose refund would be barred by the statute, was actually paid prior to its claim.

The United States Supreme Court in the case of *Rothensies* v. *Electric Storage Battery Company*, 329 U. S. 296, 299, 91 L. Ed. 296, 299 (Jackson) (1946), in emphasizing the limitation of the defense to cases concerning the same transaction, held the following: "The essence of the doctrine of recoupment is stated in the Bull case: 'recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. [Citations] It has never been thought to allow one transaction to be offset against another, but only to permit *a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.*"

We agree that the use, rather arbitrary, of said defense by the federal courts may have disconcerted the scholars —compare, for example, the case of *Bull* v. *United States,* 295 U. S. 247, 260–62, 79 L. Ed. 1421, 1427–28 (Roberts)

(1935)—recoupment of what has been paid as inheritance tax against what was owed as income tax in the same transaction, with the case of *Electric Storage Battery Company* v. *Rothensies*, 152 F. 2d 521, 523 and 534 (Goodrich)—recoupment of what has been paid as excise taxes against what was owed as income tax in two different transactions.

The case of *Rothensies* v. *Electric Storage Battery Company, supra,* had the following wholesome effects in furtherance of justice: (1) it restored the principle that the equitable recoupment defense is only granted when it is the case of the same item or transaction, through error in the application of the tax statute in connection with a given property, as well as through error in the classification or assessment of the taxable income.

(2) It likewise revived the principle that recoupment was not meant to defeat the effects of the statute of limitations in general, but within the special case of "the same transaction," it being the only way of evading the impact of prescription, stating the following: "It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy. . . . As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases. But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters . . .

*That claims dead so long can be resurrected under this doctrine, is enough to show its menace to the statute of limitations . . ."* (329 U. S., at 301–03; 91 L. Ed., at 300–01.)

(3) It prompted the United States Congress to fix statutorily the standards of equity adopted by the American courts in applying the equitable recoupment defense.

The possibility has been suggested that § 3801 (*b*) of the Federal Internal Revenue Code of 1939 was incorporated into the Federal tax law to limit the equitable use of recoupment. This is not the case. The true scope of the legislative intent in adopting such remedy is clearly expressed in the following report of the Subcommittee of the House of Representatives of the United States: "Your subcommittee has considered the problems and abuses which arise in the administration of the tax laws as a result of the operation and effect of the statute of limitations. Much litigation under the revenue acts deals with the proper year in which income and deductions belong. In none of these cases is there any doubt about the taxability or deductibility of the items involved. The Commissioner asserts that an item of income should be included in gross income for a particular year; the taxpayer contends that it should be taxed in a different year—but both agree that the item is properly a part of gross income. Similarly, taxpayers frequently claim deductions which the Commissioner denies because he believes that, although the deductions are allowable under the revenue act, they should be taken in a different year. The operation of the statute of limitations is the motivating factor in a large part of this litigation. Usually the running of the statute for one of the years involved prevents an adjustment for that year, and the parties therefore feel compelled to litigate the question to obtain a judicial determination fixing the precise year in which the item falls. If the operation of the statute of limitations were modified in such cases in order to permit a satisfactory adjustment for the

year as to which it has run, the principal reason for such litigation would disappear. In addition to the existence of such unnecessary litigation, the decisions thereunder often permit taxpayers or the Commissioner to obtain a twofold advantage by assuming in one year a position different from that taken in another year with respect to which the period of limitations has expired, so that adjustment of the tax liability for the earlier year is impossible.

"The sole purpose of the statute of limitations is to prevent the litigation of stale claims. Its use to obtain a twofold advantage, whether by double deduction or double taxation, is not in keeping with its fundamental purpose.

"Your subcommittee believes that legislation to eliminate the inequities and injustices arising from the operation of the statute of limitations which have been described would be desirable. It is recommended, therefore (Recommendation No. 48), that appropriate legislation to remedy these problems be prepared." Seidman's *Legislative History of Federal Income Tax Laws*—1938–1861—p. 144 (Prentice-Hall, 1938 ed.). Thus, the legislative intent was to adopt as a legal remedy the equitable standards set up by the United States courts.

The possibility has been likewise suggested that if a taxpayer is allowed to recoup for any item erroneously included in a year other than the year to which it corresponds, it would open the way for a taxpayer, who during a given year has had a considerable income, not to report it in that year and to include it in another, in order to pay less taxes, and, subsequently, to ask recoupment of the item erroneously included. This is obviously a case of fraud where equitable recoupment would serve no purpose since in cases of fraud or tax evasion the statute of limitations does not apply, pursuant to § 61 of Act No. 74 of August 6, 1925—13 L.P.R.A. § 779—and, therefore, the Secretary of the Treasury may proceed at any time to the redetermination of the entire

tax liability without being restricted to the single item or to the same transaction.

The statute of limitation, in claims for refund of overpayment as well as in the assessment of new deficiencies, is employed by our own Legislature to put an end to tax litigations and sanction the right to be free of stale claims. An endless relitigation of a tax debt is not salutary for the taxpayer's welfare or for the security of the public Treasury. Contemporary financial credit cannot resist the lack of stability which is represented by potential liabilities both in the national and in the individual economy. The tax debt is no exception to the economic principle of security. For economic reasons which at times are ultrajuridical, it has been the legislative policy to fix a term, at the expiration of which both the State and the citizen are free of any further liability. The defenses at law or in equity which attempt to revive these potential liabilities must be in keeping with the legislative policy of preventing litigation of stale claims.

In the case of our Income Tax Act of 1924 the diversity of the terms—four years to claim refund and seven years to assess new deficiencies—makes it advisable to extend the taxpayer's period for pleading his equitable recoupment defense to the limit which the former Treasurer had to assess new deficiencies. This formula of unwritten law finds support in our new Income Tax Act of 1954. In this Act our Legislative Assembly provides for an equal period for the taxpayer to claim refund and for the Secretary of the Treasury to assess any deficiencies under normal situations (see §§ 322(b) (1) and 275(a)).

Insofar as the Act of 1924 is concerned, just as it would be contrary to the theory of stale claims to permit a taxpayer—each time that the former Treasury notified him of a deficiency—to overstep the period of limitation allowed to the former Treasurer for assessing new deficiencies in search of any claim which he might have against the State, for the purpose of invoking the recoupment defense, it would

also be contrary to such theory to allow the present Secretary of the Treasury, each time that a taxpayer pleads an equitable recoupment defense, to go beyond the statute of limitations in search of new deficiencies. As rightly stated, such action would imply that the whole tax history of every taxpayer would always be open to investigation.

Yet, that is the practical effect of our original opinion in the instant case. Here, the taxpayer's return for the year 1941 was received in the Income Tax Bureau on April 13, 1942. From that date the former Treasurer had seven years to notify a deficiency for any omission. The way the problem has been submitted to us, we must assume that since it is not a case of fraud the taxpayer expressly waived the statute of limitation during the Treasurer's investigation, inasmuch as the latter, on June 29, 1950, served the notice of deficiency for the year 1941 in connection with certain profits realized and not distributed; the deficiency being notified, the taxpayer set up his defense and, in my opinion, he proved that he reported those profits in the income tax returns for the year 1942 and 1943 and that he paid for them.

Now, on reconsideration, the present Secretary of the Treasury alleges that since he has not yet investigated the years 1942 and 1943, the equitable recoupment defense does not lie. If this assertion were sufficient to defeat the taxpayer's right to such defense, we would have to conclude that the same would be subject to the Secretary's will. Our original opinion, in my judgment, mistaking the petition for equitable recoupment for the claim for refund, seems to agree with the theory that the recoupment defense cannot be considered until the Secretary of the Treasury investigates those years and audits all the items corresponding to them "in order to determine whether an overpayment resulted from including in those years the profits distributed by the partnership in those same years." We have seen that the case of Lewis v. Reynolds cannot be applied to this situation and

that after the case of *Rothensies* v. *Electric Storage Battery Company*, recoupment may only be granted on the same item, and the effect of prescription on this whole matter.

However, although pursuant to § 60 (*a*) (1) of our Income Tax Act of 1924, which is the law applicable here, the Secretary of the Treasury could not, at present, impose any deficiency for the years 1942 and 1943 because the statutory seven years after filing the returns have elapsed, his right to audit all the items has priority over the taxpayer's right of prescription and the taxpayer's hypothetical liability is potentially revived to defeat his equitable recoupment defense. The enumeration we made of the income and deductions corresponding to the three years involved here shows how very unrealistic is the solution applied to this case. There might exist complicated cases where the mechanism of the accrual basis system or the mathematical concatenation of certain previous facts would compel us to adopt a different attitude of flexibility guided by juridical good sense, but undoubtedly the simplicity of the facts herein does not authorize us to do so.

As to the possibility that § 57 (*h*) of our Income Tax Act of August 6, 1925, as re-enacted by Act No. 9 of October 8, 1954, which is at present § 272 (*g*) of our Income Tax Act of 1954, is applicable to the case at bar, and, therefore, may have limited the Superior Court's authority, in considering a deficiency in a given tax year, to grant an equitable recoupment defense because it lacks the power "to decide whether the tax for any other taxable year has been over or underpaid," it is well to remember that the Superior Court of Puerto Rico is a court of first instance pursuant to the provisions of § 13 (*a*) (2) of the Judiciary Act of the Commonwealth of Puerto Rico of July 24, 1952, and, therefore, a court of general jurisdiction in equity contrary to the Federal Board of Tax Appeals—when the case of *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company*, 320 U. S. 418, 420, 88 L. Ed. 139, 142 (Murphy)

(1943), was decided—for said Board was only "an independent agency in the Executive Branch of the Government"; 26 U.S.C.A. 456, § 1100 (*West Publishing Co. and Edward Thompson Company*, 1955 ed.), *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company, supra*. It is well known that an agency of the executive branch of the Government, in performing a public duty, has no authority beyond what the statute allows, while a court, besides the authority granted by law, has all the faculties granted by the Constitution and those inherent in the judicial function itself. The very case of *Commissioner of Internal Revenue* v. *Gooch Milling & Elevator Company, supra*, establishes the distinction under discussion.

It is very doubtful, pursuant to the text of § 2 of Art V of the Constitution of the Commonwealth of Puerto Rico, relating to the Judicial Power, that the Legislative Assembly of Puerto Rico may restrict the jurisdiction of the courts in Puerto Rico, jurisdiction being understood as the power to act as courts of law or of equity. The Legislative Assembly may create new courts, abolish those in existence with the exception of the Supreme Court, determine what matters each court shall entertain and the organization of those courts, but as to their power to act as a Court of Law or of Equity, the same flows directly from our Constitution. Therefore, the former case law concerning the authority of the Legislative Assembly to set aside the jurisdiction of our courts in given cases need not concern us greatly. Nor should we be concerned with the federal case law to that effect for it is based on a different constitutional situation.

As to the manner in which former § 57 (*h*) of our Income Tax Act of 1924 was re-enacted by Act No. 9 of October 8, 1954, as well as the manner in which the present § 272 (*g*) of our Income Tax Act of 1954 is drafted, we need feel no concern either. It is a simple case of incorporating into our Law an identical federal provision but without the Legislature realizing that it would be applied by different organisms,

since in the federal case it is to be applied by an executive agency which completes the procedure of levying the taxes, while in Puerto Rico it would have to be applied by a court of general jurisdiction whose power to act possibly could not be restricted by the Legislative Assembly of Puerto Rico, as already noted.

I have studied the possible retroactive effect of former § 57 (h) and of present § 272 (g) of our most recent tax law concerning deficiencies imposed pursuant to our Income Tax Act of 1924. We have found nothing in Income Tax Act No. 9 of October 8, 1954, or in our Income Tax Act No. 91 of June 29, 1954, showing the lawmaker's intent of expressly providing for the retroactive effect of those laws. Therefore, § 3 of the Civil Code which provides: "Laws shall not have a retroactive effect unless they expressly so decree. In no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action," can be applied as an authority against its retroactiveness.

I have likewise examined the question of whether, because it is a possible matter of procedure, such retroactiveness would be implied as a matter of public interest. We have been advised that the best modern theory is to consider any rule of procedure as a mixed question of procedure and substantive law, for it is not easy to make a distinction. We should ask ourselves the following: does the change in the manner of making a claim, which is the remedy, alter the substance of the right claimed, which is the declaration, sufficiently at law or in equity, to release the required legal obligation? If it does not change it, it is a procedural question; if it does, it is a question of substantive law.

Assuming that § 272 (g) of our Income Tax Act of 1954 has sought to eliminate a remedy and not the power of the Superior Court to act, we notice that our statute did not adopt § 3801 (b) of the Federal Internal Revenue Code, which, as we have already seen, is the legislative declara-

266

tion, as a legal provision, of the principles of the federal jurisprudence on equitable recoupment. There is no doubt that the Legislative Assembly may abolish some remedies in order to impose others. But it cannot abolish all remedies at the same time, for this would interfere with the power to act and this would be unconstitutional.

Undoubtedly, in the case of equitable recoupment we have a defense which, if abrogated, would decidedly impair the equitable right to consider recouped a previously paid item. The formal, the extrinsic, is the procedural denomination "defense." The substantive, the intrinsic, is the equitable right that nobody may be forced to pay twice for the same debt. This being so, it is our duty to apply the universal rule of prospectivity consecrated in our Civil Code.